IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

ELMON McCARROLL ELMORE, JR.,

    Plaintiff,

v.

PEGGY ANN COOPER, Assistant
Warden, and CORRECTIONS
CORPORATION OF AMERICA,
a Tennessee Corporation,

    Defendants.

CIVIL ACTION NO.: CV508-004

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Autry State Prison in Pelham, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983, contesting certain conditions of his confinement while he was housed at Coffee Correctional Facility in Nicholls, Georgia. Defendants filed a Motion for Summary Judgment, and Plaintiff filed a Response. For the reasons which follow, Defendants' Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff contends that on several occasions while incarcerated at Coffee Correctional Facility, he tried to use the Department of Corrections' special mailing procedure to send out large parcels of legal mail. Plaintiff alleges that on May 17, 2006, he attempted to mail an ante litem notice in order to comply with the provisions of the Georgia Tort Claims Act, O.C.G.A. § 50-21-26. (Doc. No. 1, pp. 10-11). On May 29,

however, the parcel was returned to him with the message that "no special mailing certified mail per Asst. Warden Cooper." (Id. at 11). On June 23, 2006, Plaintiff contends that he attempted to use the special mail procedure to send out his habeas corpus filing package, but that several days later he was again informed that "per Assistant Warden Cooper there was no special mailing whatsoever." (Id.). Plaintiff asserts that, after he complained, Defendant Cooper informed him that there would be no special mailing. Plaintiff contends that the inmates were subsequently informed by memorandum that the facility was changing its former DOC policies to Corrections Corporation of America policies, which, Plaintiff was informed, did not provide for special mailing. Plaintiff avers that the new policy, and Defendant Cooper's implementation and "abuse" thereof, is unconstitutional, and that it has prevented him from mailing legal documents relating to his Georgia tort claim, his habeas application, and a federal civil rights action. (Id. at 12).

Defendants assert they did not violate Plaintiff's First Amendment right to access to the courts. Defendants also assert that Plaintiff had ample opportunity to initiate or to facilitate his legal causes of action by using the prison's free mail, but Plaintiff chose to use that postage to mail other things. Defendants further assert that "Corrections Corporation of America, (a Tennessee Corporation)", which Plaintiff named as a Defendant in this case, does not exist and that, accordingly, this Court lacks jurisdiction over the real entity known as Corrections Corporation of America, a Maryland corporation.

## **STANDARD OF REVIEW**

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part[ies are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving parties bear the burden of establishing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable

inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION TO AUTHORITY

Defendants contend Plaintiff had the opportunity to use free postage to initiate or facilitate his legal actions but chose to use his postage for mailing other materials. Defendants assert Plaintiff "chose to squander" his free postage for two (2) years with "meaningless mailings to a host of people and entities unrelated to his lawsuits." (Defs.' Mem., p. 6). Defendants allege that, under these circumstances, Plaintiff cannot argue that his alleged inadequate access to the courts claim stems from a few isolated mailing attempts in May and June 2006. Defendants assert that Plaintiff, like all prisoners, is not entitled to an unlimited amount of free postage. Defendants also assert that it appears Plaintiff complains about the lack of "special mailing" privileges, which would allow him to have additional mailings above his existing allotment. (Id.) Defendants further assert that Plaintiff suffered no impairment to any pending or potential cause of action as a result of the lack of this special mailing privilege.

Plaintiff avers he was denied special or exceptional mailing privileges on three (3) occasions, which caused him to miss time deadlines in his pursuit of non-frivolous claims. Plaintiff contends that prison officials should have known that refusing to mail his petition for writ of habeas corpus, a tort claim notice, and a section 1983 lawsuit would violate his right to access to the courts. Plaintiff alleges that Coffee Correctional Facility followed the Georgia Department of Corrections' Standard Operating Procedure pertaining to inmate mailings until July 17, 2006, when the facility changed to Correction Corporation of America's procedure, and that the Georgia Department of Corrections'

Procedure allowed for special mailings. However, Plaintiff asserts, Defendants did not follow the old procedure. Plaintiff also asserts that, because he could not file a habeas corpus petition, he will be confined longer than he otherwise would "if he had won the habeas corpus lottery." (Doc. No. 131, p. 13). Plaintiff further asserts that he lost the opportunity to recover the cost of personal property and legal materials which were confiscated at his last prison because prison officials would not mail his tort claim notice.

"Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." Chappell v. Rich, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002)). In order to pass constitutional muster, the access allowed must be more than a mere formality. Bounds v. Smith, 430 U.S. 817, 822 (1977); Chappell, 340 F.3d at 1282. The access must be "adequate, effective, and meaningful." Bounds, 730 U.S. at 822. For an inmate to state a claim that he was denied access to the courts, he must establish that he suffered "actual injury" by showing that the defendant's actions hindered his ability to pursue a nonfrivolous claim. Christopher, 536 U.S. at 415; Jackson v. State Bd. of Pardons & Paroles, 331 F.3d 790, 797 (11th Cir. 2003). The pursuit of claims which are protected are those in which a plaintiff is attacking his sentence, directly or collaterally, or challenging the conditions of his confinement. See Lewis v. Casey, 518 U.S. 343 (1996). Stated another way, the "only specific types of legal claims [which] are protected by this right [are] the nonfrivolous prosecution of either a direct appeal of a conviction, a habeas petition, or a civil rights suit." Hyland v. Parker, 163 F. App'x 793,

798 (11th Cir. 2006) (citing Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998)). There is no issue of material fact when the non-moving party has failed to prove the existence of an element essential to his case. Regions Bank v. Provident Bank, Inc., 345 F.3d 1267, 1279 (11th Cir. 2003). "Actual injury" is an essential element to a claim asserting the denial of access to the courts. See Christopher, 536 U.S. at 415.

The mailing procedure in place during May and June 2006[1] allowed indigent prisoners to mail three (3) non-legal first class postage items and five (5) legal postage items per week, and one (1) special mailing item per month. (Defs.' Ex. B; Pl.'s Ex. L, pp. 17-18). This procedure also allowed inmates to mail items necessary to present a claim pursuant to O.C.G.A. § 50-21-26, including sending the notice via certified mail. Plaintiff requested postage for three (3) non-legal and four (4) legal mailings on May 4, 2006, and three (3) non-legal and five (5) legal mailings on May 30, 2006. (Defs.' Ex. B, pp. 1, 10-11). In June 2006, Plaintiff requested no postage, even though he had "enough postage to mail the standard court provided documents for a Habeas Corpus petition using the eight page preprinted form available in the prison library." (Defs.' Ex. D, ¶ 3; Defs.' Ex. B, p. 2). By Memorandum dated August 7, 2006, Warden Todd Thomas informed the inmate population that there would no longer be any special mailing allowed; however, it appears that the policy for non-legal and legal mailings was unchanged. (Pl.'s Ex. A-2). This new policy also allowed indigent inmates to receive postage for "privileged mail (e.g., to attorneys or the court system) . . . in an amount equal to five (5) one ounce letters per week and will not include registered, certified[,] or

---

[1] The undersigned presumes this was the Standard Operating Procedure in place during the relevant time period. The parties did not submit a copy of the relevant Procedure. However, Plaintiff submitted a copy of Standard Operating Procedure IIB04-0001, with an effective date of October 15, 2007, which replaced the Procedure with the effective date of November 1, 2004. (Pl.'s Ex. L). Defendants submitted Plaintiff's postage requests, which are labeled "Attachment 3, SOP IIB04-0001, (7/01/04)". (Defs.' Ex. B).

insured mail." (Pl.'s Ex. K-1, p. 5). This policy, implemented by Corrections Corporation of America, became effective on July 17, 2006.

Defendants submitted a copy of the transcript of Plaintiff's deposition, during which Plaintiff testified that he was transferred to Coffee Correctional Facility in April 2005 from Dodge State Prison. (Defs.' Ex. A, p. 9). Plaintiff stated that he tried to mail a habeas corpus petition in May 2006, which he contended was one of three documents Defendants would not mail because he was not permitted a special mailing. However, Plaintiff agreed with Defendants' counsel that he could have used the special mailing policy in place at Dodge State Prison to mail his habeas corpus petition but opted not to do so. (Id. at 12). Plaintiff also stated that he was placed improperly in administrative segregation for approximately the last two (2) months of his incarceration at Dodge State Prison and that a portion of his legal materials and other property were confiscated during that time. Plaintiff also stated he did not attempt to file a Georgia Tort Claim notice until he was at Coffee Correctional Facility because he "didn't know what amount of property was missing that formed the basis of [his] tort claim" before then. (Id. at 21).

Nothing before the Court indicates that there is a genuine issue of material fact as to whether Defendants impeded Plaintiff's efforts to file a habeas corpus petition or a § 1983 cause of action.[2] Plaintiff admitted he did not file his habeas corpus petition while he was housed at Dodge State Prison by his own choosing, and Plaintiff had enough indigent postage at his disposal to file his habeas corpus petition or a putative section 1983 lawsuit while he was housed at Coffee Correctional Facility. Thus, it was

---

[2] The undersigned is unable to discern when Plaintiff allegedly attempted to file a section 1983 cause of action or what he would contend in that cause of action. This information appears to be absent from the record before the Court.

not Defendants' actions or policies which prevented Plaintiff from filing these two (2) pleadings. Rather, it was Plaintiff's inaction that prevented these filings. This portion of Defendants' Motion should be granted.

However, there may be a question as to whether Defendants' actions and/or policies prevented Plaintiff from filing his Georgia Tort Claim notice. O.C.G.A. § 50-21-26 provides, in relevant part:

> No person, firm, or corporation having a tort claim against the state under this article shall bring any action against the state upon such claim without first giving notice of the claim as follows: (1) Notice of a claim shall be given in writing within 12 months of the date the loss was discovered or should have been discovered . . . ; and (2) Notice of a claim shall be given in writing and shall be mailed by certified mail or statutory overnight delivery, return receipt requested, or delivered personally to and a receipt obtained from the Risk Management Division of the Department of Administrative Services.

As noted above, Plaintiff stated during his deposition that he did not attempt to file his Georgia Tort Claim notice until after he arrived at Coffee Correctional Facility in April 2005. Plaintiff submitted what appear to be three (3) letters he wrote to Defendant Cooper dated May 31, June 14, and June 28, 2006. (Pl.'s Ex. E). In these letters, Plaintiff informed Defendant Cooper that he was told she would not authorize his request for a special mailing to mail his Georgia Tort Claim notice, even though the policy in place at the time permitted this mailing. In addition, Defendant Corrections Corporation of America eliminated this particular policy and no longer allowed prisoners the opportunity to mail something via certified mail when it announced changes to the mailing policy, effective July 17, 2006. Nevertheless, a state law tort claim is not the type of litigation which is protected by an inmate's right to access to the courts; it is immaterial, then, whether Defendants' actions or policies prevented Plaintiff from filing

this claim. Plaintiff's desire to file a Tort Claim Act notice with the State of Georgia is not a claim resulting in a direct or collateral attack of his sentence, nor does it represent a civil rights action.³ "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 355 (emphasis in original). Accordingly, this portion of Defendants' Motion also should be granted.

It is unnecessary to address the remaining ground set forth in Defendants' Motion.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment be **GRANTED** and that Plaintiff's Complaint be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this ___ day of June, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

---

³ The intentional deprivation of property gives rise to a Due Process Clause violation when the State fails to provide an adequate post deprivation remedy. See Hudson v. Palmer, 468 U.S. 517 (1984). Pursuant to O.C.G.A. § 51-10-1, Georgia has created a civil cause of action for the wrongful deprivation of personal property. See Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987). Accordingly, Plaintiff would not be entitled to relief on this claim, even if this Court had sanctioned this claim.